AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

SEP 29 2005

MATTHEW J. DYKMAN
CLERK

DISTRICT OF __New Mexico__

UNITED STATES OF AMERICA
V.

C.L. Brown
DOB: 4/12/67

**CRIMINAL COMPLAINT**

CASE NUMBER: **05M580**

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or __September 28, 2005__ in __Bernalillo__ County, in the _____ District of __New Mexico__ defendant(s) did, (Track Statutory Language of Offense)

Possess With Intent to Distribute Marijuana

in violation of Title __21__ United States Code, __841 (a)(1), (b)(1)(B)__

I further state that I am a(n) __Task Force Officer__ and that this complaint is based on the following
Official Title
facts:

See Attached Affidavit

Continued on the attached sheet and made a part    ☒ Yes  ☐ No

Anna C. Griego, TFO
Signature of Complainant

Sworn to before me, and subscribed in my presence,

29 September 05                                 at Albuquerque, New Mexico
Date                                            City and State

Richard L. Puglisi, U.S. Magistrate Judge
Name and Title of Judicial Officer              Signature of Judicial

## CRIMINAL COMPLAINT AFFIDAVIT

On September 27, 2005, at approximately 11:00pm, C. L. Brown, Jr. drove into the Gallup Port of Entry driving a white 2000 Freightliner tractor trailer. Motor Transport Division (MTD) Inspector Ken Homer, who was on duty at the time, made contact with Brown. Once he obtained Brown's log book, he noticed that that the driver was off duty on September 25, 2005 at Santa Rosa, NM and was back on duty on September 26, 2005 in San Simon, Arizona. The driver failed to go on duty in Santa Rosa and didn't have a co-driver.

Inspector Homer then contacted MTD Officer David Macatee who was advised of the situation. Brown was then instructed to drive the truck around to bay number two for a level 2 inspection which would consist of all company and driver information, a safety inspection of the truck, trailer, and cargo securement. The drier understood the process.

Officer Macatee began by obtaining all paperwork for the truck, trailer, company, and driver. The driver was instructed to turn on all lights and wipers, to sound both horns, and to inspect the windshield for cracks. A "walk around" inspection was then conducted checking all lights, tires, lugnuts, and listening for audible airleaks, checking for cracks in the wheels, frame, and body mounts. As Officer Macatee was conducting the inspection, he would inform Officer Murphy of any violations as he was completing the filling out of the inspection form.

Upon completion of the "walk around" inspection, the driver was asked to open the rear door of the trailer for the cargo securement check. Officer Macatee then crawled to the front of the trailer to inspect two very large metal screen devices. The objects appeared to be secure with only minimal shifting occurring within the trailer.

While looking to the front of the trailer, Officer Macatee noticed what appeared to be fresh caulking. Upon a closer inspection, he could see that the screws had fresh markings consistent with tampering. He noticed some screws were black and somewhat rust colored of the Torx head design, but inside the torx head portion areas, shiny fresh metal could be observed. There were numerous large flange aluminum rivets that appeared to have been recently installed and these rivets are not consistent with that being used for commercial vehicle trailer use. These rivets normally do not have a length long enough to secure wood of this thickness to a metal frame. Phillips type wood screws were also used in the retention of the plywood.

Officer Murphy and Inspector Homer then began checking the length of the trailer both inside and outside using a digital lazer measuring device. The measurement was approximately three feet shorter on the inside measurement. Officer Macatee then climbed into the trailer and crawled to the front and removed several screws to pull the plywood wall out to look behind it, and he discovered that as he attempted to remove the Torx headed screws that many appeared to be stripped and possibly were just placed there because they didn't appear to be actually securing anything. He then began to

remove the Phillips screws, these were somewhat tough to remove. Officer Macatee was able to pull out the upper right hand corner just enough to look inside. He observed a separate cargo area which concealed numerous square bundles, silver in color. At this time, he instructed Officer Murphy to place the driver under investigative detention for further confirmation of the articles located behind the wall of the false compartment. One piece of plywood was removed from the upper left side. Numerous large bundles were observed inside the hidden compartment. Some bundles were wrapped in a silver wrapping while others were wrapped in a wood grain looking wrapping. Two large duffel bags were seen over to the left side of the opening. To the right of the opening, the bundles were stacked close to the roof of the trailer. Speaker wire was also observed connecting to a silver colored cylindrical devise.

New Mexico State Police was requested to the scene and Agents Damyan Brown and Glen Kelsey responded. Upon their arrival, the bundles were removed from the false compartment and it was learned that the bundles contained marijuana. The marijuana was weighed at approximately 1,650 lbs. gross weight. Agent Kelsey later field tested the marijuana and it field tested positive for that substance.

Agent Kelsey and Sgt. Scott Armstrong attempted to question Brown after he was read his Miranda Warnings but Brown stated he wished to speak with an attorney before answering questions. He did, however, ask how he could help himself out with the charges and Agent Kelsey explained to him his options.

Albuquerque DEA was telephoned and advised of the situation. After being briefed on the case, TFO Griego contacted AUSA Jim Tierney who stated he would file charges against Brown in federal court.

This affidavit is submitted for the limited purpose of providing probable cause to support the attached criminal complaint. I am familiar with the information contained in this affidavit through discussions with Agents Kelsey and Brown who both have personal knowledge of the events described above. I have not set forth each and every fact learned during the course of this investigation in the above affidavit.

I, however, respectfully request the approval of this criminal complaint charging C.L. Brown with Possession With Intent to Distribute Marijuana.

_____
Anna C. Griego, Task Force Officer
Drug Enforcement Administration

Sworn and subscribed to before me
This 29th day of _____, 2005

_____
United States Magistrate Judge

APPROVED TELEPHONICALLY BY AUSA JIM TIERNEY 9-28-05, 3:25 pm